Please be seated. Madam Clerk, please call the case. 3-10-0438, Jonathan Smith, appellant Michael Hebert v. Cynthia Galanos, et al. appellee, Karen Debrain. Proceed. Good afternoon, Justice McDade, Justice Carter, Justice Schmitt. I will be brief and then I will invite questions from the panel that will, I think, give me some insights as to what the panel's thoughts are about this issue. I think this is an important issue. You would think from reading the briefs that it's a well-settled issue. It's not. And it occurs frequently in the lower courts and it doesn't make its way before the panel. And I felt that it was important to bring this appeal and I think this appeal has merit. And I think at the end of the day, if the court considers the briefs and the information in the record, it leads you to an inescapable conclusion that the judge here in the ninth inning prejudiced the plaintiff in the case and I lost the case in the ninth inning. And how did he do that? Well, the jury, an hour into deliberations, 45 minutes to an hour into deliberations on a three-car motor vehicle accident, said, May we see the police report or send in the police report? The police report in civil cases is inadmissible as a matter of law. That's Rossecki v. Pryor. And consistent with my burden of proof, that is proving the issue of the negligence of both of the defendants or one of the defendants at least, more probably true than not true, the jury, not knowing because there's no I.P.I. instruction, which there could be or should be in a perfect world, because there's no I.P.I. instruction. Where's the proof of negligence in a police report? As Mr. Newby set forth in his affidavit, he was the foreman of the jury. Would the jury know what the police report said? It would have shown. What possibly could be in that police report that would prove negligence? The movement of the vehicles, the police officer's diagram, which was hearsay, and that's the reason Rossecki v. Pryor disallows it. Well, you can have the policeman testify to it and the parties testify to all that stuff, right? The parties testified, yes. The police officer did not testify. The police officer could not testify to anything in the report except personal observations. It's hearsay, Rossecki v. Pryor. He can testify to what parties told him. And there were no omissions in there. It's all hearsay. I've been in this position many times. If it's not cast in such a way as driver of unit number one, in quotes, stated this, this, and this, it's hearsay. So what in this police report would have turned your case around? I would have gotten a verdict, at least against Ms. Cynthia Galanos, for a failure to control her vehicle. She lost control of her vehicle and received a ticket. And Mr. Newby, in his affidavit, said, we wanted to see who got the ticket. Well, of course they do. But what does a traffic ticket prove? A traffic ticket summarily proves negligence in most cases. A traffic ticket proves that some policeman thought somebody ought to get a ticket. Well, first of all, tickets are not admissible, or omissions of a ticket is not admissible unless there's a plea of guilty to it. Okay, that's why the jury, that's the reason you're making, Justice Schmidt, you're making the strongest argument as to why I was disadvantaged. They clearly wanted to know how the accident happened because they had three versions of how the accident happened. They had Mr. Schmidt's version, they had Ms. Galanos' version, and they had my client's version. There were small nuances, but clearly Ms. Galanos, she got a ticket, and it was noted on the police report, for losing control of her vehicle and causing the whole chain of accidents. Did she plead guilty? She did not. Her ticket was dismissed. So the ticket proves nothing other than the police officer thought she ought to get a ticket. That's absolutely right. But if the judge – When has there ever been evidence in this state about what some police officer thinks happened is conclusive evidence of any fact, even if it were missing? I'm not arguing with you. Rasecki v. Pryor says it's hearsay. And the officer's standard in the field for issuing a ticket is different than the civil burden of a plaintiff in court, so therefore, without a plea of guilty, it's not admissible. But that's not the issue. The issue is a legal question from the jury. The jury said, sent in the police report, the judge, under Hojack v. Harkness, had a duty to say, consistent with the law, the police report is inadmissible, don't speculate about it. I warned the judge that he would unfairly shift the burden to me. If he gave, you had the burden. He created a different burden on me. I met my burden of proof on the issue of negligence as far as getting to the jury, showing them factually how the accident occurred. Somebody in the, according to Mr. Newby, somebody said, send in the police report. Mr. Newby, apparently someone enlightened, said, well, the police report may not be admissible. Despite that, they wanted to see the police report. Had the judge said the police report is inadmissible as a matter of law or it's hearsay or whatever, if he had given something different to clear up their misunderstanding on the law, they would have said, okay, they couldn't have been given to us. It could not have been given to us. Plaintiff did not give us a critical piece of evidence, a basic, simple piece of evidence that we as lay people are expecting to see and needed instruction from the court. We could have said, all right, take the evidence the way it is, Ms. Galano's story, Mr. Schmidt's story, Mr. Smith's story, and determine who was negligent. There was really no question that Ms. Galano's lost control of her vehicle, but they wanted to know who got the ticket. What if there were no tickets issued in a police report? You still have a case, and that's all the more reason why this court should. You think that they would have assumed that if you had told them the police report was inadmissible that somebody got a ticket, but then they're going to guess who it was? No. When you look at Mr. Newby's affidavit, they never got to the issue of damages, which there was really, I was, with all due respect to the defense, I beat them on the issue of damages on the medical and everything. They never got to the issue of damages because they wanted to know there was not consensus, and there's many things that Mr. Newby would not allow me to put in his affidavit when we were discussing the issues, and I clearly had the majority early on. There was one person who had asked for the police report, and then that person killed off everybody else under the argument that plaintiffs should have just shown us who got the ticket, and what the judge did was gave them ammunition to say that when he said, You have all the evidence you're going to receive. Please continue. That suggests that there was evidence that you could have gotten, but you didn't get. And the fact of the matter is I couldn't put it in. Did you suggest an instruction that said, did you tender an instruction that said who got a ticket is inadmissible, or if anybody got a ticket is inadmissible? We had, I was at the restaurant next to the courthouse when we got the question. We went over there. The judge said, This is the question. What say you? And the record is clear. I said, Judge, you should tell them that the police report is inadmissible as a matter of law. Tendering an instruction, typing it out, writing it out. No, I didn't. But we argued it. I don't think that's in dispute between the parties. Well, I put my own point as a police report and a ticket are two different things. Well, the jury was a little bit sophisticated, probably could have phrased it better. Maybe if they had said who got a ticket, maybe the judge would have given a different response. But I doubt it because he would have said, You have all the evidence you're going to receive. Please continue to deliberate. The judge even admitted after the jury was taken out to the cloakroom after the judgment. We're all in there. I'm drafting the order. The judge comes back in. And without prompting by me, he lamented. He said, I'm sorry. Somebody's got to win these things. Somebody's got to lose these things. I said, What happened? He said they wanted to know why you didn't, why they didn't have the police report. And I said, What did you tell them? And it's there in the record on the report of proceedings. Cited in my reply brief, in my response brief, in my opening brief, in my reply brief. I told him it's inadmissible. If he had just told them that, I would have gotten a verdict. If he had just told them that in the first place, it would not have given Mr. Frackie, who was the, who was on the verdict form. It would have not given him the ammunition to peel off other people over the next three hours. Now, this was almost four hours of deliberations on a motor vehicle accident with a herniated disc. There have been multi-million medical negligence cases decided in far less time. People have gone to think that there was a lot of peeling off here by Mr. Frackie of other jurors under the argument that, well, plaintiff could have told us who got the ticket. He could have given us the police report. And this happens all the time. It happened to me in DuPage County. I didn't bring an appeal because there were other issues in the case. It happens all the time. And even when the juries decide that, well, we're going to fight in favor of the plaintiff, there's usually lower verdicts because of that. And what really needs to happen here is there needs to be some guidance from the court. Hojek v. Harkness is the only case that's directly on point. In a civil case where the jury has manifested a question about law or confusion about an issue of law, the judge has a duty to clarify that point. The cases cited by the defendants are all criminal cases where police reports are admissible. And so when the defense counsel or the prosecution in those cases fails to admit evidence, that's different. In this case, if I had stood up and said I want to put in the police report, there would have been a hole in the ceiling by Mr. O'Connor objecting to it because his client got the ticket. That's foul play. And I respect Mr. O'Connor as an advocate and as someone that I've done battle with before. I was at a disadvantage. I could not offer the police report and I would have had a mistrial, possibly sanctioned and referred to the ARDC for trying to somehow underhandedly tell the jury that Ms. Galvanos got the ticket. And that's what happened. The jury wanted to know who got the ticket. They wanted to see the police report to see how the movement contacted the vehicles occurred despite the three stories that they heard. And they wanted to see who got the ticket. And that's in Mr. Newby's affidavit. Now, they may say that, well, the case law is clear that affidavits cannot be used to impeach a jury verdict. Well, first of all, those are all criminal cases that they cite. Number one, they're all distinguishable. The jury asked to see a dictionary. The judge said no. That's people versus Williams. In a criminal case, the jury wanted to see the police report describing Ms. Florendon's initial description of the tall intruder. Well, presumably Ms. Florendon testified in the case and the cure of the hearsay problem with the report. If a defense attorney or prosecutor failed to put it in, that is their problem. In my case, I couldn't put the police report in. And I couldn't give evidence of tickets. And there is no way. Just like every other civil case in the state of Illinois since even before I entered the law school. You know? I mean, this isn't new. Doing the same bad things over and over again doesn't make them any less bad. And that's really what this is. The first district has already spoken sort of obliquely on the issue. In Hodrick v. Harkness, they said that Judge Taylor should have instructed the jury about who paid the medical bills. His failure to do so resulted in a new trial. In this case, the judge's failure to answer the jury's question about an issue of law, and that is the admissibility or inadmissibility of the police report and tickets, that tipped the scales against me, created a burden that I couldn't prove. It's like having to prove a negative. Normally a trial judge does not go into a legal analysis when they're answering jury questions. The answer that this judge gave is a very common answer. To a factual question, Justice Carter. You have all the matters that you're going to consider in the evidence. Please continue. To a factual question. Hodrick v. Harkness is the case that controls, I think, here, which says where the jury has manifested a question about the admissibility of evidence and law, the judge has to clear it up. In this case, the judge's answer was nothing. He may as well have just said no. The way he answered it, and I warned him of it, the way he answered it suggested that I could have put the police report in or shared with the jury about the issue of tickets, and I didn't do it, and then the jury rightly did what they had to do, and they reluctantly did it. They returned the verdict in favor of the defense. Why didn't the defense put the police report in? Because their client got a ticket and they could have put it in. Well, to the jury, they don't know. I mean, why would they think the defense should have put it in? I mean, you're speculating. I have the burden of proof. Counsel, you have two minutes. They harped on my burden of proof. Counsel has the burden of proof. Plaintiff has the burden of proof. Plaintiff has the burden of proof. I'm not seeking to impeach the jury's verdict. They did exactly what I would have done as a juror and as a layperson based on the information that they had or lack of information. Judge Garrison failed to give them a proper instruction during their deliberations on an issue of law. Well, they didn't ask a question of law. They asked a question of fact. Send in the police report. I'll let you talk. You look at this. Sure. And they asked a question of fact. The question of fact was can we see the police report? That's not a question of fact. That's an issue. They wanted to see something that I couldn't have put into evidence. And if he said no and he didn't ask why can't we see it or something, do you think the group of laypeople are going to really understand legal admissibility? If the judge had given a proper answer such as you were not to consider the police report, the police report is inadmissible, they would have gotten it. They would have known that no matter who wanted to put it in, it couldn't have been put in, and I would have gotten a verdict between $11,000, which is the bills, and the $90,000, which I asked for. And that's what would have happened, and that's what Mr. Newby's affidavit clearly, clearly shows. And guess what? I don't even have to prove that because, again, that's like proving the negative. What I have proved is that there is a, under the law, the judge failed to do what he was supposed to do, and it prejudiced my case, and I think I'm entitled to a new trial. You know, the Supreme Court as recent as 2005 restated the rule that affidavits can't be, you can't use an affidavit to impeach. To impeach a jury verdict. It's different here. I'm not impeaching the jury verdict. I'm not impeaching it. It's the right verdict based on, predicated on judicial error. I can assure that if this case, if this court does the right thing and gives me a new trial, should the Supreme Court revisit the issue at some day, they'll agree with you. That there is a critical distinction here, and I know that this court can recognize that distinction. Thank you very much. Counsel, you may argue. Good afternoon, Your Honors. Karen DeGrand on behalf of the appellees, David Schultz and Kent Power Company. I think that answering the one issue that's been raised by the plaintiff here really can be broken down into three questions. The first question is, did the court do the right thing within its discretion and under the law? And the second question is, could it possibly have made any difference if, comparing the answer that the court gave to that I submit factual question versus the answer that counsel proposed be given. And the third question is, does the record at all support the prejudice of the plaintiff's claims? And I think the record is pretty clear, so I'll be brief. I have to disagree with counsel's recitation or characterization of the question that the jury asked. The jury didn't ask, are police reports admissible? The jury said, can we see the police report? And counsel calls that a question of law, but then he, the plaintiff I should say, characterizes it as a question of fact, which is they wanted to know who had a ticket. That's a question of fact. And under the law, people versus Williams, people versus Ramos, civil cases as well, when there's a factual question that's posed to a trial court, the trial court is within its discretion in not giving a specific answer, not giving any answer in fact, and the case law fully supports the answer that the court gave in this case. And as Judge Garrison said, and he looked at this carefully twice, when the question came up and then later in the post-trial motion, he didn't give a short shrift by any stretch. He looked at it and he said, we have these kinds of questions all the time. This is a question of fact. Police reports aren't admissible, but I don't have to tell the jury that. He simply said, you have the evidence that you're going to have. Please deliberate. And how that is different than the answer that the plaintiff posed, I don't see that it could possibly make any difference to the jury. You have the evidence, please deliberate, versus police reports aren't admissible, don't speculate. There's no basis in the record for concluding that that would have made a difference with this jury. And the court is obviously 100% right with respect to affidavits. Of course, we don't have the transcript of proceedings, so there's no basis for the court to know what the testimony was. So that's out as far as trying to discern some type of potential impact on the court's reaction to this question based on testimony. So that's gone. We have the affidavit of Mr. Newby, and I still don't really follow the plaintiff's argument that he's not trying to impeach the verdict. That's exactly what he's trying to do. And the interesting response and the reply to our position, which is not just in criminal cases, as counsel suggested, but also in civil cases, including one of this court's cases, Couch v. State Farm, affidavits of jurors are generally not reviewed or considered to impeach a verdict unless there's an improper extraneous influence. And on the reply, plaintiff stated the improper extraneous influence was the judge. Well, I think that that exception would swallow the rule. The kinds of cases where the court does make an exception in considering affidavits are cases like Holmes or Stallings or Freed, where the jurors are very enterprising, go out and do independent investigation and bring books in that haven't been discussed or go to the hardware store to look at blades in a product case or in the Holmes case, a criminal case. Or the bailiff does something wrong. I'm sorry? Or the bailiff does something wrong. Well, that's not a bailiff case. But Holmes is an extraneous influence. But that would be an extraneous influence. And that's the kind of situation. But having said that, I invite the court to look at the affidavit because, as the trial judge observed, there's nothing in this affidavit that doesn't affirm the verdict. Mr. Newby crossed out basically what is the plaintiff's basis for this whole appeal because the plaintiff prepared the affidavit, Mr. Newby looked at it and accepted some of it, rejected parts of it. He rejected the part where it said, the jury, let me make sure I have the language correct. He crossed out the sentence, the discussion focused on why such a critical and helpful piece of evidence had not been given to us. He crossed that out. He said the jury felt the evidence may have been helpful. Maybe it would be. Maybe it wouldn't. Maybe the information about the ticket would be helpful. Maybe it wouldn't. It's a fact question. The judge did exactly the right thing. And I don't think there's any basis for disturbing the judgment that was entered on the jury's verdict. And if there's no questions by the panel, I thank you for your time and ask for affirmance. Thank you. Counsel, you may argue. Again, just to be clear, all of the cases that are cited about the issue of affidavits from jurors involve bailiffs, other jurors saying things to bailiffs, bailiffs saying things to other jurors, all of those things. It is good policy to insulate jury verdicts from those things. As a plaintiff's lawyer, I live by this word and I die by this word, and that is good policy. But this case is different. It's predicated on judicial error. The first question that this court probably should ask is, does sitting in the police report, what does that say? It manifests, it touches upon an issue of law. Because, again, all parties agree that under Rasecki v. Pryor, if I had said, judge, I seek to admit into evidence the police report, counsel denied contendedness of what you're saying. So if I can't put that in, the judge has to tell the jury that. Under your definition, wouldn't every question a jury asks, can you conceive of a question a jury could ask wouldn't touch on a question of law? No, where a jury says, what did so and so say about this issue? You have all the evidence you're going to receive. Please continue to deliberate. That's what happened in People v. I think it's People v. Ramos. The jury wanted to see the police report to see what Ms. Clorendon said about her initial statement to the police officer about the intruder. Well, that's different. That's a factual question. Based on you have your notes, you have your recollection. Please continue to deliberate. But a question of law, the jury, it's such a basic thing as a layperson. When I became a lawyer and I learned that I couldn't put in evidence of a ticket unless there was a guilty of plea, I thought, well, that's nonsense. And I'm a lawyer. Juries think the exact same way, and that's why they ask. When you have a rear-ender, it's real easy. That doesn't become an issue. Where you have an intersection and somebody says, OK, I entered the intersection on the red light, that's not an issue. But where you have snow and ice conditions and one vehicle is traveling too fast and she loses control of her vehicle and causes all of this to happen, and then she comes to court and says, I don't remember, but she got the ticket. And the jury, she made a good witness, the jury liked her, and the jury says, fine, let's see the police report. It was incumbent upon any judge to say the police report is inadmissible. Let me ask you this. In your brief, you argue, your argument is phrased, you need a new trial because the trial court failed to instruct the jury that traffic citations are inadmissible. Well, that's what Mr. Newby's affidavit. They wanted to see the police report to get to the issue of traffic citations. It's a layered thing. You may file a motion in limine to eliminate two. Didn't you file a motion in limine about traffic citations? That is true. I had that in a motion in limine. But if Mr. O'Connor withdrew his when the court granted mine. But let's suppose I had not brought that motion in limine and I had decided to play games at trial. Would that have changed anything? Would I have been able to put the police report into evidence? Would it not have been unfair to Mr. O'Connor for me to step up in front of the jury and say I want to put the police report into evidence and have Mr. O'Connor jump up out of his seat and object? No, I couldn't put it in. I couldn't put it in, period. The police report could not come in. Therefore, they could not get to the issue of tickets. And rather than doing the right thing, the judicial thing, the judge gave them the response that you give to a factual question. You have all the evidence you're going to receive. Please continue to deliberate. To a lay person that says, eh, that doesn't say plaintiff couldn't put it in. That says plaintiff didn't put it in. Plaintiff fell to meet his burden of proof on a critical piece of evidence. And we have to do what we have to do. And that's what happened here. And it's unjust. Well, how was it after your trial? At the end of that trial, how was it that you suppose that the jury was left with the idea that that police report was a critical piece of evidence? Well, because when the judge saw them out, they asked the judge, and it's in the record, why didn't we get the police report? And then I called Mr. Newby. I called Mr. Newby a couple days after the verdict. I don't remember exactly when. And I said, hey, what happened? And he gave me an earful. Counsel, that's one minute. And when I told him what my intention was, obviously the weight of the world fell on his shoulder. But he gave me a truthful affidavit. He didn't want to speak for everyone, so his strike, his crossing out and tweaking the language does not change the thrust of the affidavit is that the jury got hung up on my failure to put in evidence that I was barred from putting in, and that's unfair. And anybody who doesn't have a dog in the fight looking at it objectively would come to that conclusion. It was just fundamentally unfair. I could not put in evidence of tickets, evidence of the police report, and that created a problem for the jury. It was such a basic thing that I lost the case for that reason. Well, whose duty was it to convince the jury that they ought to give you money? It was my duty. More probably true than not true. But they never got to the issue of money because they thought I could easily dispense with the issue of negligence by putting in the police report and giving them evidence of tickets. And I couldn't. Thank you. Thank you, Counsel. The court will take this case under advisement and render a decision with dispatch. Meantime, we'll have the panel change and so the next panel will come out.